In re Richard L. GIANTVALLEY and Antoinette H. Giantvalley, fdba Giantvalley Construction, G & W Construction, G & W Enterprises, Giantvalley's, Debtors.

MENELEY MOTORS, INC., a Nevada Corporation, Plaintiff,

v.

Richard L. GIANTVALLEY, et al., Defendants.

Bankruptcy No. 80–00518.
Adv. No. 80–0087.

United States Bankruptcy Court,
D. Nevada.

Oct. 5, 1981.

Sherrin, O'Reilly & Walsh by James M. O'Reilly, Gardnerville, Nev., for plaintiff.

Stephen M. Stephens, Carson City, Nev., for defendants.

## OPINION AND DECISION

BERT M. GOLDWATER, Bankruptcy Judge.

This is an adversary action seeking the denial of the general discharge of debtor-defendants under 11 U.S.C. § 727 and the nondischargeability of plaintiff's claim under 11 U.S.C. § 523(a)(6).

In April 1979, defendant Richard Giantvalley (Richard) purchased from plaintiff a diesel tractor and certain tractor implements for $8,400.00. He paid $3,008.00 in cash and signed a note at 17.4% interest to

seller and International Harvester Credit Corporation of San Leandro, California, for $5,392.00. He also signed a security agreement in favor of plaintiff on the tractor and tractor implements purchased. The equipment was delivered to Richard in California, and a UCC financing statement was filed in the Office of the California Secretary of State on April 30, 1979.

After defendants defaulted in the payment of their obligation, plaintiff filed suit in Nevada. A default judgment was entered against defendants February 26, 1980 and defendants were ordered to return the tractor and tractor implements. When defendants refused to comply with the order, plaintiff employed an investigator who discovered that Richard had sold the tractor to one Doug Brunner in Oroville, California, in the fall of 1979 for approximately $6,200.00.

Nevertheless, Richard did make payments totalling $4,235.22 and returned an auger post hole digger, one of the tractor implements, for a credit of $500.00, before the filing of the bankruptcy petition herein on August 1, 1980.[1]

Plaintiff has not pursued its objection to the general discharge of the defendants, but contends that its claim is nondischargeable because Richard willfully and maliciously transferred property in which plaintiff had a security interest. Defendants contend that the sale contract is void for usury under N.R.S. 99.050. Alternatively, defendants contend that Antoinette Giantvalley is not liable because she and Richard were legally separated on the date of the contract.

### I.

11 U.S.C. § 523(a)(6) provides in part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt

\*   \*   \*   \*   \*   \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

Under the statute injuries are not confined to physical damage or destruction. The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of § 523(a)(6). 3 *Collier on Bankruptcy* 523–116 (15th ed.). However, a claim founded upon a mere technical conversion without conscious intent to violate the rights of another and under mistake or misapprehension is dischargeable. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

Richard converted the property of plaintiff because his disposition of the property was unauthorized, the creditor was entitled to possession at the time of the disposition and was unaware that the property was being sold in violation of the terms of the security agreement securing the debt. *In re McCloud*, 7 B.R. 819, 3 C.B.C.2d 701 (Bkrtcy.Tenn.1980). The conversion was also willful and malicious. Richard intentionally disposed of the tractor and knew that by doing so plaintiff would be injured by the loss of its security.

### II.

With respect to defendants' usury argument, in *Ferdie Sievers & Lake Tahoe Land Co., Inc., v. Diversified Mortg. Investors*, 95 Nev. 811, 603 P.2d 270 (1979), the Nevada Supreme Court held that where the parties stipulated to a fair and reasonable rate of interest valid under the laws of a state to which the transaction has a substantial nexus, and there is not a clear effort to evade Nevada law, the provision should not be found violative of Nevada's public policy. The transaction in this case clearly has a substantial nexus to California,[2] and a 17.4% interest rate was valid

---

1. Payments of $3,500.00, $174.00, $200.00, $83.93, and $277.29 were made on March 18, April 14, April 18, June 23, and July 18, 1980 respectively.

2. Richard allowed his address to be listed as Box 1664, Truckee, California 95734, on the Security Agreement, the equipment was deliv-

under the laws of California in April 1979 because the sale of property to be paid for in installments is not a forbearance of money in terms of California usury law. 13 Cal.Jur.3rd *Consumer and Borrower Protection Laws*, Sec. 150 (1974). Consequently, defendants' contention that the contract is usurious under N.R.S. 99.050 is without merit.

### III.

■ In the event a debt is held to be nondischargeable under the Bankruptcy Code, the claimant has the same right to recover against community property as existed prior to the order for relief. 11 U.S.C. § 524(a)(3); 3 *Collier on Bankruptcy* 524–9 (15th ed.). The question of whether Nevada community property is liable for the debt to plaintiff is one for a Nevada court and not this Court. Although the defendants may have been separated at the time of the purchase of the tractor, their status continued to be husband and wife subject to Nevada or California community property laws.

### IV.

Let judgment be entered that defendant-debtors are entitled to a general discharge under 11 U.S.C. § 727, but plaintiff's claim, which this Court finds to be in the amount of $664.78 plus interest, to be computed on a declining principal balance from the date of each payment on the contract and the date the auger post hole digger was returned, is nondischargeable under 11 U.S.C. § 523(a)(6). Plaintiff is entitled to attorney's fees of $2,174.50 and costs of $382.00.

ered to defendant in California, and the contract was financed in part by International Har-

vester Credit Corporation of San Leandro, California.