In re Robert W. GREIG, Debtor.

Edward BONENFANT, Plaintiff,

v.

Robert W. GREIG, Defendant.

Bankruptcy No. 181–00159.
Adv. No. 181–0092.

United States Bankruptcy Court,
D. Maine.

July 7, 1982.

---

Peter T. Dawson, Augusta, Me., for debtor.

Sumner H. Lipman, Augusta, Me., for plaintiff.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Edward Bonenfant has filed a Complaint to Determine Dischargeability of Debt, alleging that the debtor willfully and maliciously injured him. Trial was held on April 21, 1982, and both parties filed briefs. The court finds the following facts:

Bonenfant and Greig were friends in 1978. On September 10, 1978, Bonenfant went to a dance with Greig's girlfriend. Bonenfant had earlier told Greig of his intention to take her to the dance, and Greig had not objected. Greig unfortunately forgot about that conversation, and spent three hours that night searching for his girlfriend and Bonenfant. Greig testified that he was upset and angry when he arrived at Bonenfant's home sometime after midnight, and did not know what he would do when he entered the house. Greig had earlier been drinking, and felt affected by the alcohol but not drunk. Greig entered Bonenfant's home through the kitchen door. Bonenfant and Greig's girlfriend were sitting in the living room. Bonenfant heard a noise and rose to investigate. As he turned to enter the kitchen, Greig punched him, knocking him unconscious. Greig testified that he formed the intent to hit Bonenfant a split second before doing so, and that he bore no ill will, hatred or malice towards Bonenfant. After Bonenfant regained consciousness, Greig apologized. Despite Bonenfant's later attempts to instigate further battle, Greig refused to fight. The evening ended with the two men and the girlfriend sharing a bottle of rum.

Introduced into evidence were three letters written by Bonenfant's attorney to Greig's attorney regarding settlement negotiations. The November 26, 1980 letter states that Bonenfant would settle the case for $5,000. The letter dated January 6, 1981 states: "This is to confirm that we have settled the above case for $4,000.00 based upon the money being delivered, along with the appropriate documents you wish our client to execute within the next thirty days." The January 29, 1981 letter states: "I thought we settled the case. Where is our money?" No money, in fact, changed hands.

Title 11 U.S.C. § 523(a)(6) provides that a debt for willful and malicious injury by the debtor to another entity is nondischargeable. "Willful" means "deliberate" or "intentional." *See In re Meyer*, 7 B.R. 932, 933, 3 C.B.C.2d 534, 535 (Bkrtcy.N.D.Ill. 1981). "Malicious" has been defined as "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will," *In re Finnie*, 10 B.R. 262, 264 (Bkrtcy.D.Mass.1981); *Meyer*, 7 B.R. at 933, 3 C.B.C.2d at 536, and as with "intent to do harm," *In re Nelson*, 10 B.R. 691, 692 (Bkrtcy.N.D.Ill.1981); *In re Hodges*, 4 B.R. 513, 516, 6 B.C.D. 531, 533, 2 C.B.C.2d 566, 570 (Bkrtcy.W.D.Va.1980).

■ The court finds by a preponderance of the evidence that the injury to Bonenfant was willful and malicious. The debtor admitted that he formed the intent to strike Bonenfant immediately before doing so; thus, the action was willful. The debtor further testified that he had been vainly searching for his girlfriend and Bonenfant for hours, and that he was upset and angry. He entered Bonenfant's home uninvited, and his immediate action upon seeing Bonenfant was to knock him unconscious. This evidence amply demonstrates that at the time he threw the punch, the debtor, in fact, *intended* to harm Bonenfant; thus, his action was malicious.[1]

■ The debtor raises accord and satisfaction as an affirmative defense. Obviously, there has here been no "satisfaction"; the $4,000 allegedly agreed upon for settlement of this claim has never been paid. An agreement between two parties, one of whom is to give and the other to accept something of value in satisfaction of an existing obligation, "*when performed* becomes a bar to any action on the original obligation." *Emerson v. Sweet*, 432 A.2d 784, 785 (Me.1981) (emphasis added). Moreover, proof of an accord requires proof of an *agreement* between the two parties. *Id.* While the evidence supports a finding that one party *believed* an agreement had been reached, the Court is not persuaded that the parties did, in fact, agree.

The plaintiff's claim arising from the injury caused by the debtor striking the plaintiff on or about September 10, 1978 is declared to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6).

---

1. The debtor argues that proof of a willful act alone cannot, as a matter of law, be sufficient to prove malice. The court disagrees. "Easy to deny and hard to prove, the secret state of mind may be laid bare, if at all, by reference to the acts of its creator." *In re Cooney*, 18 B.R. 1011, 6 C.B.C.2d 302, 304 (Bkrtcy.W.D.Ky. 1982). The intent to do harm may, but need not, be inferred from the act complained of itself. In this case, however, the evidence of the surrounding circumstances, in addition to the act itself, supports the court's finding of malice.

The debtor further points to his actions after he struck the blow as evidence of his lack of malice, stating "it defies common sense and our knowledge of human nature to assert malice in the hearts of men who, after the events previously described, sit down together and consume an entire gallon of rum." While the debtor's actions after the attack evidence remorse and a desire to remain friendly, the Court remains persuaded that the injury was malicious within the meaning of 11 U.S.C. § 523(a)(6).