Douglas R. PRINCE and Jane Prince,
Official Unsecured Creditors'
Committee, Plaintiff,

v.

Timothy J. CLARE, Defendant.

No. 84 C 7694.

United States District Court,
N.D. Illinois, E.D.

Oct. 30, 1986.

David G. Lynch, Thomas F. Geselbracht, Rudnich & Wolfe, Chicago, Ill., for plaintiff.

Robert M. Foote, Patrick M. Kinnally, Murphy, Hupp, Foote & Mielke, David P. Peskind, David P. Peskind Ltd., Aurora, Ill., James E. Dahl, Michael H. Moirano, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The defendant in interpleader, the Official Unsecured Creditors' Committee of Douglas R. Prince and Jane Prince ("Committee"), moves this court to grant the Committee partial summary judgment on its breach of contract, conversion and unjust enrichment claims against the defendant Timothy J. Clare ("Clare"). Because the Committee was not the legal owner of the shares of the professional corporation in question at the time the alleged claims arose, the court denies the Committee's motion.

### I

### Factual and Procedural Background

On August 17, 1981, Douglas R. Prince ("Prince") and Jane Prince commenced proceedings before the United States Bankruptcy Court of this district in order to obtain reorganization pursuant to Chapter 11 of the United States Code. At that time, the bankruptcy court designated the Committee to administer the assets of the bankruptcy estate. One of the assets that vested in the bankruptcy estate at that time was the stock in Prince's professional corporation, Douglas R. Prince, D.D.S., M.S., Ltd. ("corporation"), the business of which was orthodontia. On November 4, 1983, the Bankruptcy Court confirmed Prince's Amended Disclosure Statement and Plan ("Plan") dated February 10, 1983.

Thereafter, on February 25, 1984, Prince entered into a written contract with Clare for the sale of Prince's corporation. Ap-

proximately five months later, Clare refused to perform any further under the contract. A dispute has arisen between Prince, Clare and the Committee concerning their respective rights and obligations in and to the corporation after the bankruptcy proceedings and confirmation of the Plan.

On September 6, 1984, Prince initiated this action against Clare by filing a complaint seeking damages and a declaratory judgment. In the complaint, Prince alleges that Clare breached the contract reached with Prince, damaged Prince's orthodontic practice, and wrongfully retained several months' income from Prince's practice. In Clare's answer, he asserts that Prince did not have the "power or authority to sell" the corporation and that, consequently, the contract between Prince and Clare is void.

The Committee also filed an action against Clare. On September 28, 1984, in a complaint filed in the bankruptcy court, the Committee demands damages and injunctive relief for a variety of alleged wrongdoings by Clare. Clare offered to purchase the corporation from the Committee and the Committee allegedly accepted Clare's offer. The Committee claims in its complaint that Clare breached the purchase agreement with the Committee and that Clare wrongfully diverted assets of the bankruptcy estate.

On September 13, 1985, this court allowed Clare to file a counterclaim in interpleader against the Committee which required the Committee to assert its claims against Clare in this action. The Committee then moved for withdrawal of reference of its adversary action against Clare pending in the bankruptcy court. This court granted the Committee's motion.

The Committee now moves this court for partial summary judgment against Clare pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Committee claims no genuine issues of material fact exist with respect to its breach of contract, conversion and unjust enrichment claims against Clare. In a memorandum filed in response to the Committee's motion, Prince correctly states that the critical issue to be decided at this stage is the ownership of the corporation after the bankruptcy court confirmed the Plan. Consequently, the court will address that issue first.

## II

### Ownership of the Corporation After Confirmation of the Plan

▮ Except as otherwise provided in the Plan or the order confirming the Plan, the confirmation of the Plan vested all of the property of the bankruptcy estate in the debtor Prince. 11 U.S.C. § 1141(b) (1978); *In re Auto West, Inc.*, 43 B.R. 761, 763 (D.Utah 1984); *United States v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984). The purpose of revesting the property in the debtor is to make the debtor in possession master of his own fate in the commercial world, free of the press of those creditors to whom he was indebted before he became a Chapter 11 supplicant. *In re NJB Prime Investors*, 3 B.R. 553, 556 (Bankr.S.D.N.Y. 1980). After the Plan was confirmed, the bankruptcy court no longer controlled disposition of such property; after confirmation, Prince's control of the revested property was the same as if no bankruptcy case had ever been filed, except to the extent that the Plan or order confirming the Plan provides otherwise. *In re Mason*, 45 B.R. 498, 500 (Bankr.D.Ore.1984).

▮ Since the Plan does not provide otherwise, legal title to the corporation revested in Prince after confirmation of the Plan. Nowhere in the Plan does it explicitly state that the Committee is to retain legal ownership of the corporation after confirmation. On pages 45 and 46 dealing with the "Professional Corporation," the Plan merely requires Prince to deposit in the creditors' fund the nominal value of the corporation's stock. The Plan provides that if the value of the stock is contested, the bankruptcy court should hold a valuation hearing. No mention is made of the legal ownership of the stock itself.

In fact, sections of the Plan can be interpreted as affirmatively providing that

Prince was the legal owner of the corporation after confirmation of the Plan. At page 3, the Plan proposes that "the *debtors* sell or retain the property, real and personal, free and clear, according to the appraisal value of the property." (emphasis added). Certainly it is reasonable to assume that if the Plan provided that Prince could sell his property, Prince would first have to possess title to that same property before he could sell it.

■■■ In its reply to Clare's response to its motion for summary judgment, the Committee asserts for the first time that it was the owner of the *beneficial* interest in the corporation. Assuming this to be the case, the Committee's motion for summary judgment on the contract claim still fails. A party can transfer to another only those interests that that party possesses. The Committee's breach of contract claim alleges that the Committee and Clare entered into a contract with respect to the *Prince practice* itself. The Committee, however, did not own the Prince practice or corporation itself; as it states in its reply, the Committee only owned a beneficial interest in the corporation. The Committee cites no cases which state that a party who has contracted to sell an asset to another can recover for breach of contract when that party did not own the asset at the time the contract was formed and has not obtained the asset since. Consequently, the court denies the Committee's motion with respect to its breach-of-contract claim.

■■■ The court also denies the Committee's motion on the conversion claim. As the Committee states in its original motion, the essence of conversion is not the acquisition of the property by the wrongdoer, but a wrongful deprivation of the owner's right to possess it. *Dickson v. Riebling*, 30 Ill. App.3d 965, 967, 333 N.E.2d 646, 648 (1975). In its motion, the Committee charges that "Clare has flagrantly deprived the Committee of its right to operate the Prince practice." Committee's Motion for Summary Judgment at p. 9. As already indicated, however, the Committee did not have the right to operate the Prince practice. Prince had that right. The Committee at best had a "beneficial interest" in the corporation, and does not allege in its original motion that Clare deprived it of that.

■■■ Finally, the court addresses the unjust enrichment claim. The action is maintainable wherever one party has received money or its equivalent under circumstances in which, according to the dictates of equity and good conscience, the party ought not retain such benefit. *Rutledge v. Housing Authority*, 84 Ill.App.3d 1064, 44 Ill.Dec. 176, 179, 411 N.E.2d 82, 85 (1980). First, the court notes that it is reluctant to make a decision on such an equitable claim without the benefit of hearing the testimony of the parties involved. Second, the Committee's motion again states that Clare unjustly took and retained the "Prince practice" from the Committee. The court has already stated why the Committee did not own the practice at the relevant time in this case. Finally, the court notes that the Committee is still entitled to the fair value of the corporation from Prince himself, so no great injustice appears to be done to the Committee by denying its motion.

■■■ In its reply to Clare's response to its motion, the Committee raised a number of legal theories that were not raised in its original motion. The reply is limited to those matters raised in the original motion. Consequently, the court will not address these other legal theories.

## CONCLUSION

For the foregoing reasons, the Committee's motion for summary judgment is denied. A status hearing in this case is set for November 13, 1986 at 9:30 a.m.